```
FILED
May 26 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

In re:
**COURT OPERATIONS UNDER THE EXIGENT**
**CIRCUMSTANCES CREATED BY THE OUTBREAK**          Case No. 2:20mc7
**OF CORONAVIRUS DISEASE 2019 (COVID-19):**
**PHASED EXPANSION OF COURT OPERATIONS**

### General Order No. 2020-16

The United States District Court for the Eastern District of Virginia has continued to closely monitor the outbreak of Coronavirus Disease 2019 (COVID-19), as well as the developing guidance from the Centers for Disease Control and Prevention (CDC), and state and local health authorities.

**I. Summary of Phased Expansion of Court Operations**

The Court takes the following actions as part of its phased expansion of operations:[1]

> (1) Consistent with this Court's prior **General Order 2020-12**, and unless otherwise ordered by this Court, **effective June 11, 2020, in-person proceedings will no longer be strictly limited to "critical or emergency proceedings."** Depending on local circumstances, in-person proceedings that may resume on June 11, 2020, with necessary social distancing safeguards in place,[2] include civil and criminal bench trials

---

[1] In an effort to provide a complete picture of the anticipated phased expansion of Court operations in our District, the summary also includes certain actions already taken by this Court.

[2] Efforts should be made to limit all in-person proceedings to the minimum number of necessary participants, and the number of observers permitted in the gallery at any given time should likewise be carefully limited by the presiding judge, who may need to require observers to rotate in and out of the Courtroom in order to protect all those present while preserving public

as well as misdemeanor, traffic, and petty offense proceedings with precautions taken to reduce docket sizes to comply with social distancing requirements. As recommended by the Administrative Office of the United States Courts (AO) in its Federal Judiciary COVID-19 Recovery Guidelines (AO Guidelines), judges of this Court will "**continu[e] to use video- and tele-conferencing to the greatest extent possible**," for both civil proceedings and criminal proceedings authorized by the CARES Act. Additionally, consistent with **General Order 2020-11,** which establishes a temporary policy authorizing the use of teleconference services to allow the public remote access to the audio-stream of remote or partially remote hearings, a presiding judge conducting an in-person hearing during the national emergency created by the COVID-19 pandemic may elect to utilize the toll-free teleconference service to allow the public the option to access the hearing without physically appearing, thereby reducing the number of individuals present in the Courtroom.

(2) **Face Coverings will be required to be worn in all common areas of our Courthouses**, to include in all Courtrooms, and **social distancing of at least six feet** shall be maintained whenever possible. For detailed information on these requirements, and applicable exceptions, see **General Order 2020-14.** Additionally, for information regarding restrictions on entry to our Courthouses, see the Attachments to General Order **2020-15.**

---

access to our Court. In order to ensure that galleries are not overcrowded, the Court will make efforts to mark permissible seating areas in the gallery of each of our Courtrooms at least six feet apart.

2

(3) As recommended by the AO, employees "should conduct a health self-assessment," prior to entering our Courthouses, to include an evaluation for COVID-19 symptoms and a temperature check whenever possible.³  If an employee's temperature is greater than 100.4 degrees Fahrenheit, or if an employee is exhibiting other signs of COVID-19 infection per CDC guidance (which includes coughing), he or she must **stay home**, contact the appropriate supervisor, and should consider calling his or her physician.  Similarly, building tenants are requested to perform a daily health assessment and should stay home if they have a temperature greater than 100.4 or are exhibiting COVID-19 symptoms.  All Court units, chambers, and building tenants are further encouraged to request that any Courthouse visitors with whom they communicate, to include probationers, attorneys, litigants, witnesses, jurors, and guests, similarly conduct a health self-assessment before entering our Courthouses and avoid appearing and contact the  appropriate office/chambers if sick.

(4) While more in-person proceedings will be permitted beginning on June 11, 2020, **no criminal jury trials shall be conducted prior to Tuesday, July 7, 2020**.  Jury trials involve additional exposure risks that necessitate a further reduction in COVID-19 cases within our District before they can be safely conducted, as well as the creation of special

---

³ In addition to any reference tool that may be provided by a Court Unit Executive (Chief Probation Officer or Clerk of Court), the Virginia Department of Health Daily Monitoring Log may be a helpful reference tool for conducting a daily self-assessment.  See https://www.vdh.virginia.gov/content/uploads/sites/182/2020/03/Daily_Monitoring_Log.pdf.  For more information on COVID-19 symptoms, and for a "Self-Checker" questionnaire that may assist those feeling ill, see https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html.

procedures to reduce the risk of COVID-19 exposure during trial, which may require the reconfiguration of Courtrooms and/or the use of multiple Courtrooms to conduct a single jury trial.  Moreover, the additional time will permit the Court to develop and circulate safety procedures to prospective jurors, witnesses, litigants, attorneys, and the public, in order to foster confidence in the safety of the jury process.  Efforts will also be made to develop a process to pre-screen prospective jurors in order to reduce the number of individuals that are summonsed to the Courthouse only to be excused at an early stage in the Voir Dire process.  The AO's working group responsible for addressing the resumption of jury trials is still actively developing guidance on how to safely conduct jury trials in the midst of the COVID-19 pandemic, and the **July 7, 2020,** date may be extended by subsequent order of the Court depending on evolving conditions across our District.

(5) **Grand juries may be utilized again** in all Divisions of this Court beginning on **June 11, 2020,** as long as the grand jury proceedings are conducted with the same procedural safeguards and <u>strict social distancing</u> (which requires, among other things, the use of the gallery of a large courtroom) as have been implemented for the "emergency" grand jury proceedings conducted, or currently scheduled, with special authorization of the Chief Judge.  The U.S. Attorney shall coordinate with the senior active judge of the Alexandria and Richmond Divisions, and the Chief Judge of the Court for the Norfolk and Newport News Divisions, to determine scheduling for grand juries to be conducted after June 11, 2020, in order to ensure the availability of a sufficiently large Courtroom and required associated space.  New grand

juries should not be empaneled **before Tuesday, July 7, 2020 at the earliest**, in light of the number of prospective jurors that must be summonsed in order to empanel a new grand jury. The U.S. Attorney shall not empanel a new grand jury without prior permission of the Chief Judge.

(6) **No civil jury trials shall be conducted until further notice**, as the interests of justice require the prioritization of criminal jury trials during the upcoming months. After criminal jury trials resume, the Court will reassess its capacity to conduct civil jury trials and then establish a timeline for the resumption of such trials.

(7) **Naturalization ceremonies will continue to be postponed** until further notice, with naturalizations for individuals that are not pursuing a name change being handled administratively by U.S. Citizenship and Immigration Services for the next several months due to the naturalization backlog created by the COVID-19 pandemic.[4]

(8) Consistent with this Court's prior **General Order 2020-4**, all non-case related outside events, tours, and other gatherings in our Courthouses continue to be **postponed until further notice**.

---

[4] In the event that a naturalization candidate that requires a name change has a critical need to move forward with naturalization without further delay, the Chief Judge may grant an exception on a case-by-case basis and permit a judicial officer to hold a limited proceeding if it can be conducted in a manner that conforms with strict social distancing requirements.

5

## II. Explanation of Staged Expansion in our District

In an effort to provide further transparency and clarity regarding the dates selected for the staged resumption of live proceedings and bench trials, criminal jury trials, and then civil jury trials, a detailed explanation is provided below.

### A. Virginia's Local Response to COVID-19

On March 23, 2020, the Governor of Virginia issued an order restricting the operations of restaurants and other "non-essential retail businesses" for a period of one month; the Governor later extended such order two additional times.  On March 30, 2020, the Governor issued an order instructing all Virginians to remain in their homes through June 10, 2020, unless leaving to engage in an activity designated as permissible by such "stay-at-home" order. Later, in early May of this year, the Governor outlined a preliminary plan for a phased reopening of Virginia, which would begin prior to the previously established date of June 11, 2020.

Effective May 15, 2020, with appropriate social distancing and other restrictive rules in place, Virginia began its phased reopening.  Phase I of Virginia's reopening plan permits certain businesses to once again serve the public, and the Governor announced that the previously enacted "stay-at-home" order would become a "safer-at-home" order that permits more freedom of movement, but still encourages Virginians to stay at home as much as possible.  Notably, however, the May 15, 2020, phased reopening

did not include multiple cities and counties in Northern Virginia, the city of Richmond, or the county of Accomack, due to the severity of the local COVID-19 outbreaks in such areas. The Governor indicated that these excluded areas, which are located within the Alexandria, Richmond, and Norfolk Divisions of this Court, will remain in "Phase Zero" until at least May 28, 2020.

### B. The AO Recovery Guidelines

On April 24, 2020, the AO updated its COVID-19 pandemic response resources by providing the AO Guidelines as a model for federal courts to resume or expand operations in a carefully calculated and phased manner. The AO Guidelines expressly recognize that "[b]ecause each state and municipality is in a different posture in the fight against COVID-19, each circuit and district will have to make local decisions on operational status based on the jurisdiction's current COVID-19 case count and local stay-at-home and quarantine orders." Such Guidelines provide needed flexibility to individual districts based on the obvious variation in district-by-district COVID-19 risk factors, and expressly acknowledge that courts will likely have different starting points in their phased reopening as some federal courthouses previously shut down entirely, whereas others continued to conduct limited operations similar to "Phase I" of the reopening plan outlined by the AO. In taking the appropriate steps to reestablish or expand court operations, the AO recommends

that the phase initially selected as a starting point "not be any greater than the phase" communicated by the local public health community.

The AO Guidelines propose several "gating criteria" that should be satisfied before a court proceeds with a phased reopening, to include "sustained downward trending average of cumulative daily COVID-19 case counts over a 14-day period," and a "rescission of local restrictive movement and/or shelter in place orders." Such criteria are to be used not only during the reopening process, but over time to determine whether the court should progress to the next phase and further expand operations, or step back to a more restrictive phase in light of worsening local conditions. As explained by the AO, the phased approach should be implemented in a manner whereby the "health and welfare of each Judiciary employee, contractor, and member of the public that enters our facilities" is given "paramount" importance, with the stated goals including mitigating risks of COVID-19 resurgence and protecting "vulnerable individuals."[5]

---

[5] Per CDC Guidance, "vulnerable individuals" include: (1) people 65 years and older; (2) people who live in a nursing home or long-term care facility; and (3) people of all ages with underlying medical conditions, particularly if not well controlled, including those who suffer from chronic lung disease, moderate to severe asthma, serious heart conditions, immune disorders, severe obesity, diabetes, chronic kidney disease, or liver disease. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

**C. Discussion of the Court's Staged Expansion**

Recent circumstances, to include the Governor of Virginia's amendments to the Virginia timeline for phased reopening, as well as the issuance of the AO Guidelines, have led this Court to re-evaluate its current operational posture. The first step was to determine which "Phase" from the AO Guidelines most aligns with the Court's current operations because, with the exception of emergency cleaning closures and the temporary repurposing of the Newport News Courthouse as an Emergency Judicial Center, the Courthouses in this District have remained open for limited operations, to include in-person hearings for "critical and emergency" matters. The Court's evaluation revealed that our Courthouses are currently operating in a manner very close to what the AO Guidelines describe as Phase I, and that conditions in this District are progressing toward meeting the gating criteria to expand operations closer to what the AO describes as Phase II,[6] although the June 11, 2020, operational step forward in this

---

[6] Phase I of the AO Guidelines involves limited courthouse operations, maximum teleworking, strict social distancing and isolation, and conducting in-person hearings/proceedings only for critical and emergency matters. While the AO indicates that a court operating in Phase I should "evaluate" whether any jury trials can be conducted, the strict requirement of six feet of social distancing appears to largely eliminate the prospect for jury trials. Phase II of the AO Guidelines still encourages in-person proceedings to be limited and recommends continued use of video and teleconferencing <u>to the greatest extent possible</u>; however, it allows for more in-person proceedings and some jury trials, and recommends that, depending on the circumstances, either "strict" or "moderate" social distancing protocols be followed. Phase II further provides that "vulnerable individuals" as defined by the CDC, a classification that likely reaches many judicial officers and experienced attorneys in our District, <u>continue to telework</u>.

District <u>will not include the resumption of criminal or civil jury trials</u>.

To better explain this Court's measured approach to expanding operations, the Court first notes that, while it is true that the Commonwealth of Virginia has taken a small step forward in emerging from its COVID-19 shutdown, the limited opening beginning on May 15, 2020, came with substantial caveats aimed at continuing to limit person-to-person contact. These restrictions include continuing to ban social gatherings of more than ten people, as well as strongly encouraging or requiring six feet of social distancing and wearing face coverings in public settings (workers in certain businesses that are reopening or expanding operations will be required to wear face coverings).[7]

Second, although the Governor's stated goal was for Virginia to collectively reopen all areas of the Commonwealth at the same time, the local conditions caused by the persistence of the COVID-19 outbreak caused local leaders to request that the phased reopening be delayed in Northern Virginia, Richmond, and Accomack. Notably, each of these areas falls within a different Division of this Court. The powerful signal from local leaders in response to local community spread is supported by testing results with

---

[7] See https://www.governor.virginia.gov/media/governorvirginiagov/governor-of-virginia/pdf/Virginia-Forward-Phase-One-Business-Sector-Guidelines.pdf.

10

persistently high positivity rates, and counsels in favor of the measured approach taken today by this Court.

Third, as of the date of this General Order, the AO gating criteria recommending the identification of a fourteen-day downward trend in new COVID-19 cases has not been met based on case counts across Virginia, although the statewide data of "percent positivity" has been trending down for several weeks.[8] While this Court will continue to consider a broad spectrum of available data in an effort to mitigate the risks of COVID-19 resurgence and protect all individuals in our Courthouses, and most especially "vulnerable individuals," the case-count gating criteria recommended by the AO remains an important data point.[9]

---

[8] While, the statewide percent positivity has been trending down for several weeks, the percent of positive cases in Richmond and in the area around our Alexandria Courthouse remains much higher than the rest of the Commonwealth, which is an obvious concern for local leaders and this Court.  This Court will continue to closely monitor the outbreaks in these areas over the next several weeks to ensure that Court operations in these areas are not expanded prematurely.

[9] Although no metric alone is determinative, the statewide "percent positivity" seven-day rolling average based on "lab report date" was relied on heavily by the Governor of Virginia in making his decision to move forward with a limited reopening.  Like the statewide percent positivity, the number of people hospitalized with confirmed or pending COVID-19 tests appears to have been trending downward for multiple weeks.  The total number of new daily cases has yet to see a downward trend, although there has been a flatting of the curve of new cases (the seven-day rolling average of new daily cases has fluctuated between approximately 825 and 950 for the past two weeks).  On May 25, 2020, Virginia reported 1,483 new COVID-19 cases, by far the greatest number of daily COVID-19 cases reported in Virginia since the beginning of the outbreak.  However, just one day earlier, on May 24, 2020, less than 500 new cases were reported, by far the lowest number reported in more than a month.  Such daily fluctuations reflect the importance of considering the case totals on a five-day or seven-day rolling average basis when attempting to identify a "trend."  Additionally, the Court must consider the fact that far more tests are being conducted in

11

Relatedly, the AO gating criteria regarding the rescission of local restrictive movement orders has not been met as of the date of this General Order in Northern Virginia, Richmond, or Accomack, although it is anticipated that such areas will soon move into what Virginia has defined as its "Phase One." Therefore, the Court is announcing these actions today because it recognizes the need for advance planning and scheduling of hearings. Although this Court anticipates that conditions will warrant the expansion of Courthouse operations by June 11, 2020, such date is subject to amendment should case counts fail to decline, if there is a notable increase in percent positivity, or if there are significant further delays in opening Northern Virginia, Richmond, and Accomack.

In light of the current conditions in Virginia, and the anticipated conditions several weeks from now, "on-site Court proceedings and off-site visits to supervisees" can be increased starting June 11, 2020, but only to the extent deemed appropriate by the presiding judge and the Chief Probation Officer, respectively. While such expanded operations are authorized, consistent with AO Guidance, this Court will "continu[e] to use video- and tele-conferencing to the greatest extent possible," and

---

Virginia on a daily basis, which will lead to more positive results even as the "percent positivity" drops. The fact that the number of daily new cases remains persistently high illustrates why this Court's next planned step forward: (1) is a measured step forward, generally requiring strict social distancing and mandated face coverings; (2) will not take effect for more than two weeks; and (3) is subject to revision should conditions fail to improve.

"[f]ace-to-face meetings should continue to try to limit gatherings to the minimum size needed [and] adhere to strict social distancing and hygiene protocols." All vulnerable individuals that work in our Courthouses should continue to telework to the greatest extent possible, and all visitors to our Courthouses that qualify as "vulnerable" should, if possible, pursue alternative means to conduct their necessary business without physically appearing in our Courthouses, to include the utilization of remote proceedings. Consistent with AO guidance, employees that do not qualify as "vulnerable" are still encouraged to telework after June 11, 2020, "whenever possible and feasible with Judiciary operations." All litigants and lawyers are encouraged to continue submitting filings remotely to the greatest extent possible. Although the Clerk's Office public counters will remain closed to the public until further notice, filing drop boxes are available in each of our Courthouses. Such drop-boxes allow litigants to date stamp their filings and securely submit them without entering the Clerk's Office, and a telephone is available in the drop-box area to allow filers to obtain assistance from District Court and Bankruptcy Court Clerk's Office staff. These Clerk's Office staff will continue working, in our Courthouses and remotely, to process electronic and drop-box filings and to answer calls made from inside and outside our Courthouses.

As to jury trials, the Court finds that it is premature to begin jury trials on June 11, 2020, when the other proceedings referenced above are permitted to begin, because of, among other considerations: (1) the slight relaxation (as contrasted with "rescission") of local restrictive movement orders in Virginia; (2) the fact that cities and/or counties located in three of the four Divisions of this Court remain in "Phase Zero" of Virginia's phased reopening plan and have not yet implemented their anticipated "relaxation" of restrictive movement orders; (3) the sheer number of individuals (including jurors and alternate jurors, the presiding judge, court staff, counsel, litigants, U.S. Marshals, Court security officers, witnesses, and members of the public) that are present in the same room during a jury trial; (4) the increased exposure risk to incarcerated Defendants, U.S. Marshals, and local jail officials when incarcerated Defendants are repeatedly transferred to and from our courthouses over the course of a multi-day or multi-week trial; (5) the physical distancing challenges associated with bench conferences, which are a frequent occurrence in both criminal and civil trials; and (6) the fact that our existing physical facilities, as currently designed and used, place jurors far less than six feet apart for almost the entire trial day (to include in the jury assembly room, Courtroom gallery, Courtroom jury box, and in relatively small jury rooms). Both the AO and this Court continue to evaluate and

14

develop procedures and "best practices" to safely conduct a jury trial in the midst of a deadly and contagious pandemic,[10] procedures that once finalized may only allow for trials in a limited number of courtrooms that can accommodate configurations conducive to social distancing.

Moreover, in light of the number of individuals that must be present in the courtroom for a jury trial, and the fact that jurors and prospective jurors are compelled to appear in court and must be safeguarded, trials may require the use of multiple courtrooms to facilitate sufficient space for distancing and deliberations, which will put a further strain on the number of trials that can be safely conducted at any given time.[11]  Accordingly, this Court

---

[10] Based on the Court's inability to safely conduct jury trials at this time, to include the likely and understandable difficulty for any empaneled juror to maintain focus on the presentation of evidence to the degree necessary to provide a fair trial in the absence of robust procedures to ensure juror safety, and for the reasons stated in General Orders 2020-06, 2020-07 and 2020-12, the period of June 11, 2020, through July 6, 2020, is hereby excluded from the speedy trial calculations for the commencement of trial, pursuant to 18 U.S.C. § 3161(h)(7)(A).  The Court makes such "ends of justice" findings after balancing the factors discussed in 18 U.S.C. § 3161(h)(7)(B), and finds that the exclusion of such time is necessary to avoid a miscarriage of justice, to allow lawyers and litigants the time necessary for effective preparation, and to balance the health and safety of jurors and prospective jurors, court employees, criminal defendants, counsel, judges, and the public with the Constitutional and statutory responsibility to continue federal court operations during the COVID-19 pandemic.  It is anticipated that judges of this Court will likely revisit this issue and make any additional speedy trial findings needed in the record of individual criminal cases where trial was delayed as a result of the COVID-19 outbreak.

[11] Furthermore, the process of selecting a petit jury may take days, rather than hours, as much smaller groups of individuals will need to be called in at one time, and the number of individuals that will ultimately be excused due to advanced age, health conditions, previously unanticipated issues with

finds that it is necessary to continue to monitor local conditions and the AO gating criteria (which have not yet been satisfied in Virginia) for a period of at least thirty days after the anticipated reopening of Northern Virginia, Richmond, and Accomack. In an effort to provide scheduling transparency in light of the number of persons involved in coordinating a federal jury trial, the Court finds that **no criminal jury trials shall be conducted prior to Tuesday, July 7, 2020.**[12]

In contrast to criminal jury trials, **civil jury trials are postponed indefinitely** at this time in light of criminal defendants' constitutional and statutory speedy trial rights. Importantly, the Court's anticipated reduced capacity to try jury trials during the upcoming months, coupled with the backlog of cases caused by the COVID-19 pandemic, mandates that criminal matters be prioritized and that resources be focused on trying criminal cases as soon as it is safe to do so. After criminal jury trials resume and the precautionary procedures and trial schedules are better established, the Court will reassess its

---

child care, or other complications caused by the COVID-19 pandemic, will likely substantially delay the selection process.

[12] Such date is announced in order to provide the greatest degree of predictability that is possible during this unpredictable time, where pandemic conditions continue to evolve on a daily basis. The emerging case statistics and the response of local and statewide authorities will factor heavily in this Court's later decision as to whether such date remains an appropriate date to safely begin conducting criminal jury trials or whether the resumption of such trials must be further delayed.

capacity to conduct civil jury trials and then announce a date for the resumption of civil jury trials.

The operational path forward outlined above, which is subject to modification as conditions evolve, was reached after careful consideration of the risks to the public, litigants, counsel, court employees, and judges, and after consultation with appropriate stakeholders and other judges of this Court. Careful evaluation of local conditions in our District will continue, and evidence from public health authorities documenting a reduction, or resurgence, of COVID-19 cases will ultimately determine whether the current plan is feasible, or whether it becomes necessary to take a more cautious approach to expanding Court operations.

**It is so ORDERED.**

/s/ 
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May __26__, 2020